UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS MARCELIS,

Plaintiff,

v.

HEIDI WASHINGTON et al.,

Defendants.

Case No. 1:26-cv-606

Honorable Ray Kent

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 3).

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, MCF Warden James Schiebner, Assistant Jeanine Winger, MDOC Manager of

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of “parties” and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

Grievance Section Richard Russell, Vital Care Health Strategies Co-CEOs Viola Riggin[2] and Chris Gurko, Healthcare Unit Manager Mike Wilkinson, Registered Nurses Mary Anderson and Patricia Lamb, Nurse Practitioners Michelle Bray, Sarah Keyes, and Katina Kuerth, Nurses Tamerla Hamilton, Laura Mitteer, Delores Rhodes, Elaine Coulson, Kathy Sherwood, Rose Korth-McDonnell, and Patti Knapp, Correctional Officer Nick Crawford, and Grievance Coordinator Loretta Rarnse.

In Plaintiff's complaint, he alleges that, in or around late January 2024, Plaintiff injured his finger while working and a blood clot developed under his nail. (Compl., ECF No. 1, PageID.6.) On February 7, 2024, Plaintiff sent a kite to Defendant Wilkinson concerning his injured finger. (*Id.*) Defendant Wilkinson replied to Plaintiff that Plaintiff should look for a call out; however, Plaintiff was never called out to healthcare. (*Id.*) Plaintiff sent "numerous complaints" to "health care" over the following months, but nothing was done. (*Id.*)

On May 11, 2024, Plaintiff sent a kite to medical stating that his "finger is hurting real bad" and not healing." (ECF No. 1-11, PageID.35.) Two days later, Defendant Anderson responded that Plaintiff has an upcoming chronic care appointment and that, if Plaintiff would like to be seen sooner by a nurse, he can submit another kite with specific symptoms. (*Id.*)

During the end of May and the beginning of June, Plaintiff submitted another kite and had "staff call [health care]." (Compl., ECF No. 1, PageID.6.) Plaintiff was seen by Defendant Hamilton, who evaluated Plaintiff's finger, told Plaintiff that the injury was minimal, and did not order treatment. (*Id.*) At the time, "Plaintiff's finger tip [sic] was black, nail lifting, & sides were

[2] Plaintiff refers to this Defendant as "Riggin," "Riggn," and "Riggins"; however, because the context of the complaint indicates that Plaintiff's spellings refer to a single Defendant, the Court will use the spelling of "Riggin" in the caption of Plaintiff's complaint.

splitting open." (*Id.*) Plaintiff asked to see a doctor, but Defendant Hamilton told Plaintiff that she was too busy and needed to leave. (*Id.*)

Plaintiff submitted a medical kite on June 5, 2024, stating, "I was there for my finger, you did nothing." (ECF No. 1-19, PageID.43.) Defendant Sherwood responded by scheduling Plaintiff for a nursing assessment and instructing Plaintiff to continue using Tylenol/Ibuprofen for pain, apply a warm compress, and keep the area clean and dry. (*Id.*)

On June 7, 2024, Defendants Keyes and Crawford evaluated Plaintiff's condition and noted that Plaintiff's condition arose one month prior due to smoking illicit substances. (Compl., ECF No. 1, PageID.8; ECF No. 1-15, PageID.39.) Later that month, on June 16, 2024, Plaintiff reported that he had injured his finger that day at work. (ECF No. 1-12, PageID.36.)

On June 27, 2024, Plaintiff filed a grievance against Defendants Hamilton, Rhoads, Coulson, Anderson, and Wilkinson. (Compl., ECF No. 1, PageID.8.) Defendant Lamb responded to Plaintiff's grievance, agreeing with the treatment provided by Defendants. (*Id.*) Plaintiff filed two additional grievances against Defendant Crawford related to the notes in Plaintiff's medical records that Plaintiff had burned his finger while smoking. (*Id.*)

On July 18, 2024, Plaintiff spoke with Defendant Anderson regarding his pain and informed Defendant Anderson that he was out of his prescribed medication. (*Id.*, PageID.6; ECF No. 1-13, PageID.37.) Defendant Anderson contacted the on-call provider, who ordered additional pain medication. (*Id.*)

Plaintiff indicates that, at some unidentified point, the condition of Plaintiff's finger worsened, and non-party correctional officers called health care on Plaintiff's behalf. (*Id.*) Plaintiff was eventually seen by Defendants Rhoads, Bray, and Coulson, who each decided that the condition was not serious and forced Plaintiff to leave. (*Id.*, PageID.6–7.)

On June 12, 2024, "[P]laintiff's finger busted open [at] the tip" and Plaintiff was sent to non-party outside medical provider Dr. Elliot Wagner. (*Id.*, PageID.7.) On June 24, 2024, Plaintiff was "rushed to emergency [at] Trinity Health" where a portion of Plaintiff's finger was amputated due to gangrene and MRSA" (methicillin-resistant *Staphylococcus aureus*). (*Id.*)

Defendant Hamilton examined Plaintiff on August 14, 2024, after it was discovered that Plaintiff's finger was bleeding. (ECF No. 1-26, PageID.52.) Defendant Hamilton instructed Plaintiff that no dressing was needed to cover Plaintiff's finger; however, Plaintiff disagreed. (*Id.*)

Plaintiff submitted a kite to medical on August 20, 2024, asking for his pain medication three times a day. (ECF No. 1-25, PageID.51.) Defendant Mitteer responded, stating:

> The Ultram ordered yesterday for the evening was for the one time dose only. You have a current prescription for naproxen with the last refill being sent less than two weeks ago on 8/08/24. Kite for monthly refills. You can also supplement the naproxen with a dose or two of acetaminophen. Both are available for purchase from the store.

(ECF No. 1-25, PageID.51.)

On August 26, 2024, Defendant Knapp overcharged Plaintiff for copying fees by making duplicate copies of Plaintiff's medical records. (Compl., ECF No. 1, PageID.7.)

On August 28, 2024, Plaintiff submitted a message asking to see a doctor because his finger was hurting and was "infected again." (*Id.*, PageID.10; ECF No. 1-20, PageID.44.) Defendant Sherwood noted that Plaintiff had seen a doctor the previous day and that Plaintiff should "continue with current POC." (*Id.*)

On September 6, 2024, Defendant Coulson responded to Plaintiff's kite requesting pain medication, stating: "Continue to take antibiotics as prescribed, the pain should be subsiding daily. The provider has reviewed this several times Tylenol is the appropriate form of treatment for your pain." (Sept. 6, 2024, Kite Response, ECF No. 1-16, PageID.40.) Plaintiff was seen by Defendant Kuerth for a follow-up visit on September 12, 2024. (Compl., ECF No. 1, PageID.7; ECF No. 1-

14, PageID.38.) At that time, Plaintiff was counseled on "smoking cessation" and to avoid putting his fingers in his mouth. (*Id.*) Plaintiff informed Defendant Kuerth that he never smoked and did not put his hands in his mouth. (*Id.*)

On September 21, 2024, Plaintiff submitted a kite asking to see Defendant Kuerth for complaints of pain and infection. (ECF No. 1-17, PageID.41.) Defendant Sherwood responded to Plaintiff's kite two days later, scheduling Plaintiff for an appointment on September 24, 2024. (*Id.*)

On October 7, 2024, Plaintiff informed Defendant Hamilton of the pain in his finger and asked for pain medication. (Compl., ECF No. 1, PageID.10; ECF No. 1-21, PageID.45.) Defendant Hamilton scheduled a dressing change appointment for the following day to address the issue. (*Id.*)

On October 9, 2024, a third party contacted Defendant Wilkinson to discuss Plaintiff's condition. (ECF No. 1-27, PageID.53.) In response, Defendant Wilkinson spoke with Defendant Kuerth, who indicated that she was in the process of consulting with an infectious disease specialist about the need for pain medication and to address the MRSA infection. (*Id.*)

Plaintiff claims that "[a]ll Defendants" knew of Plaintiff's condition and failed to provide him with proper treatment. (Compl., ECF No. 1, PageID.9.) On October 30, 2025, Plaintiff filed a grievance claiming that Defendants Riggin and Gurko instructed staff to deny Plaintiff proper treatment to save money. (*Id.*) Plaintiff also faults Defendants Washington, Winger, and Barnse for failing to act. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.1.) Plaintiff seeks injunctive and monetary relief. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Discussion

### A. Allegations Against "Health Care" and "Staff"

Plaintiff makes several allegations against "Defendants," "health care," and MDOC "staff." These factual allegations, even if construed against Defendants as a group, are insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against "health care," "staff," and Defendants as a group fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B. Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*,

535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff does not allege ongoing conduct by Defendants. Indeed, Plaintiff's complaint does not concern any events after October 2024. Accordingly, Plaintiff's request for injunctive relief cannot by properly characterized as prospective.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's official capacity claims.

**C. Claims Against Defendants Washington, Winger, Barnse, Schiebner, Russell, Riggin, Gurko and Korth-McDonnell.**

Plaintiff lists Defendants Washington, Winger, Barnse, Schiebner, Russell, Riggin, Gurko, and Korth-McDonnell in his list of parties but does not make sufficient factual allegations against these Defendants within the body of his complaint. While Plaintiff claims that he filed grievances against Defendants Washington, Winger, Barnse, Riggin, and Gurko, he describes only his complaints against them; he does describe the conduct of these Defendants that gave rise to Plaintiff's complaints. And Plaintiff does not mention Defendants Schiebner, Russell, and Korth-McDonnell within his factual allegations.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal

involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

To the extent that Plaintiff brings claims against these "Defendant(s) as Administrator(s) for the MDOC w/power to intervene in unconstitutional behavior of subordinates," (Compl., ECF No. 1, PageID.11–12), Plaintiff's claims will be dismissed.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have

> interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to provide the court with any well-pleaded factual allegations that would suggest that Defendants Washington, Winger, Barnse, Schiebner, Russell, Riggin, Gurko and Korth-McDonnell authorized, approved, or knowingly acquiesced in any unconstitutional conduct. While Plaintiff states that he filed a grievance against Defendants Riggin and Gurko, alleging that they instructed staff to deny Plaintiff proper treatment to save money (Compl., ECF No. 1, PageID.9), Plaintiff has not alleged any facts whatsoever to support this allegation.

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's complaint against Defendants Washington, Winger, Barnse, Schiebner, Russell, Riggin, Gurko, and Korth-McDonnell for failure to state a claim.

### D. First Amendment Claims

Plaintiff brings First Amendment claims of retaliation and violation of his right to petition the government for the redress of grievances. (Compl., ECF No. 1, PageID.11.)

#### 1. Retaliation

Plaintiff claims that he was issued a false misconduct charge for threatening behavior and placed in segregation for complaining about a lack of proper medical treatment. (Compl., ECF No. 1, PageID.11.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As an initial matter, Plaintiff does not provide the Court with any facts concerning the false misconduct charge or Plaintiff's placement in segregation and does not indicate which named Defendants, if any, were involved in those actions. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's conclusory allegations concerning these events are insufficient to establish that any named Defendant was personally involved in the alleged violation of Plaintiff's First Amendment rights.

Moreover, Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact

of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff has not alleged any *facts* that would plausibly suggest that the decision to issue a misconduct charge or place Plaintiff in segregation were in fact motivated by Plaintiff's complaints of inadequate medical care. Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation.

**2. Violation of Plaintiff's Right to Petition the Government**

Plaintiff does not elaborate on his claim that he was denied the right to petition the government for the redress of grievances; however, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Here, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of

*available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Therefore, the Court will dismiss Plaintiff's First Amendment claims for violation of his right to petition the government for redress of grievances.

### E. Eighth Amendment Medical Care Claims

Plaintiff alleges that he was denied adequate medical care for his injured finger. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner

who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty*., 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, the Court finds that Plaintiff has alleged sufficient facts to state an objectively serious medical condition. Therefore, the Court will turn to the subjective prong with respect tor the named Defendants.

**1. Defendant Wilkinson**

Plaintiff alleges that he sent a kite to Defendant Wilkinson on February 7, 2024, and that Defendant Wilkinson told Plaintiff that Plaintiff should look for a call out, but that Plaintiff never received that call out. (Compl., ECF No. 1, PageID.6.) These allegations, taken as true, do not demonstrate deliberate indifference on the part of Defendant Wilkinson. Plaintiff's complaint does not plausibly suggest that Defendant Wilkinson was responsible for the lack of medical call out or that he was aware that Plaintiff was not called out and faced a substantial risk of serious harm. At best, Plaintiff's allegations allege negligence. However, an Eighth Amendment violation, however, requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Plaintiff also alleges that a third party contacted Defendant Wilkinson to discuss Plaintiff's condition on October 9, 2024. (ECF No. 1-27, PageID.53.) In response, Defendant Wilkinson spoke with Defendant Kuerth, who indicated that she was in the process of consulting with an infectious disease specialist about the need for pain medication and to address the MRSA infection. (*Id.*) Defendant Wilkinson's actions in following up with Plaintiff's medical care provider to ensure that Plaintiff's condition was being addressed, even if Plaintiff would have preferred a different course of action, does not amount to deliberate indifference. Accordingly, Plaintiff's Eighth Amendment claims against Defendant Wilkinson will be dismissed

**2. Defendant Anderson**

On May 11, 2024, Plaintiff sent a kite to medical stating that his "finger is hurting real bad" and not healing." (ECF No. 1-11, PageID.35.) Two days later, Defendant Anderson responded that Plaintiff has an upcoming chronic care appointment and that, if Plaintiff would like to be seen

sooner by a nurse, he can submit another kite with specific symptoms. (*Id.*) Again, on July 18, 2024, Plaintiff spoke with Defendant Anderson regarding his pain and informed Defendant Anderson that he was out of his prescribed medication. (ECF No. 1-13, PageID.37.) Defendant Anderson contacted the on-call provider, who ordered additional pain medication. (*Id.*)

These allegations, taken as true, do not demonstrate that Defendant Anderson was deliberately indifferent to Plaintiff's medical condition. Defendant Anderson confirmed Plaintiff's chronic care appointment, provided Plaintiff with an option if he required more urgent care, and obtained an order for additional pain medication when necessary. The Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Anderson.

**3. Defendant Hamilton**

Plaintiff claims that Defendant Hamilton evaluated Plaintiff's injured finger following Plaintiff's kites sent in late-May and early-June. (Compl., ECF No. 1, PageID.6.) At that time, "Plaintiff's finger tip [sic] was black, nail lifting, & sides were splitting open." (*Id.*) Plaintiff asked to see a doctor, but Defendant Hamilton did not order medical treatment, telling Plaintiff that the injury was minimal and that she was too busy and needed to leave. (*Id.*)

Defendant Hamilton again examined Plaintiff on August 14, 2024, after it was discovered that Plaintiff's finger was bleeding. (ECF No. 1-26, PageID.52.) Defendant Hamilton instructed Plaintiff that no dressing was needed to cover Plaintiff's finger; however, Plaintiff disagreed. (*Id.*)

On October 7, 2024, Plaintiff informed Defendant Hamilton of the pain in his finger and asked for pain medication. (Compl., ECF No. 1, PageID.10; ECF No. 1-21, PageID.45.) Defendant Hamilton scheduled a dressing change appointment for the following day to address the issue. (*Id.*) Plaintiff does not provide the Court with the details of that appointment.

As for Plaintiff's August 14, 2024, and October 7, 2024, interactions with Defendant Hamilton, the Court understands that Plaintiff may disagree with the course of treatment provided

by Defendant Hamilton; however, the disagreement with a provider "over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). These allegations do not give rise to an Eighth Amendment claim.

However, with respect to Plaintiff's claim that Defendant Hamilton refused to provide Plaintiff with medical treatment because she was too busy and needed to leave, although Plaintiff has by no means proven his claims at this stage of the litigation, taking Plaintiff's allegations as true, the Court will allow Plaintiff to proceed with this claim of inadequate medical care.

**4. Defendant Sherwood**

In response to Plaintiff's June 5, 2024, kite, Defendant Sherwood scheduled Plaintiff for a nursing assessment and instructed Plaintiff to continue using Tylenol/Ibuprofen for pain, apply a warm compress, and keep the area clean and dry. (ECF No. 1-19, PageID.43.) Defendant Sherwood also responded to Plaintiff's August 28, 2024, kite by noting that Plaintiff had seen a doctor the previous day and instructing Plaintiff to "continue with current POC." (Compl., ECF No. 1, PageID.10; ECF No. 1-20, PageID.44.) As discussed above, these allegations amount to nothing more than a disagreement over the proper course of treatment. They do not amount to deliberate indifference, giving rise to an Eighth Amendment claim. *See Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605.

**5. Defendants Keyes, Crawford, and Kuerth**

Plaintiff claims that that Defendants Keyes and Crawford noted that Plaintiff's condition arose due to Plaintiff's smoking of illicit substances and that Defendant Kuerth counseled on "smoking cessation" and to avoid putting his fingers in his mouth even through Plaintiff never smoked and did not put his hands in his mouth. (Compl., ECF No. 1, PageID.7–8.) These

allegations do not state a claim for deliberate indifference. Noting the incorrect cause of Plaintiff's injury and counseling Plaintiff on risk factors, even if incorrect and unnecessary, does not demonstrate a lack of medical treatment, let alone deliberate indifference to a substantial risk of serious harm.

**6. Defendants Rhoads, Bray, and Coulson**

Plaintiff claims that Defendants Rhoads, Bray, and Coulson examined Plaintiff's finger after multiple non-party correctional officers called health care on Plaintiff's behalf. (Compl., ECF No. 1, PageID.6.) Each Defendant told Plaintiff that his condition was not serious and "forc[ed] plaintiff to leave." (*Id.*) These allegations are insufficient to state an Eighth Amendment claim.

Plaintiff does not provide the Court with any facts concerning what Defendants Rhoads, Bray, and Coulson each knew or observed at the time that they examined Plaintiff to plausibly suggest that each Defendant knew of a substantial risk of serious harm and could be said to have deliberately disregarded that risk. Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79.

Plaintiff also alleges that Defendant Coulson responded to one of Plaintiff's kites requesting pain medication by stating: "Continue to take antibiotics as prescribed, the pain should be subsiding daily. The provider has reviewed this several times Tylenol is the appropriate form of treatment for your pain." (Sept. 6, 2024, Kite Response, ECF No. 1-16, PageID.40.) Plaintiff's disagreement with the course of treatment prescribed by his "provider," reiterated by Defendant Coulson, does not state an Eighth Amendment claim for deliberate indifference.

**7. Defendant Mitteer**

Plaintiff alleges that he submitted a kite to medical on August 20, 2024, asking for his pain medication three times a day, and that Defendant Mitteer responded, stating:

> The Ultram ordered yesterday for the evening was for the one time dose only. You have a current prescription for naproxen with the last refill being sent less than two weeks ago on 8/08/24. Kite for monthly refills. You can also supplement the naproxen with a dose or two of acetaminophen. Both are available for purchase from the store.

(ECF No. 1-25, PageID.51.) These allegations indicate that Defendant Mitteer considered the treatment of Plaintiff's complaints of pain. Although Plaintiff may have desired a different course of action, Plaintiff's allegations against Defendant Mitteer again amount to nothing more than a disagreement over the proper course of treatment; they do not give rise to an Eighth Amendment claim. *See Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605

**8. Defendant Lamb**

Plaintiff faults Defendant Lamb for responding to Plaintiff's grievance and agreeing with the course of treatment provided. (Compl., ECF No. 1, PageID.8.) However, the United States Court of Appeals for the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. *Id.* Failing to intervene on a prisoner's behalf or merely denying an administrative grievance to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior *Id.* Therefore, the Court will dismiss Plaintiff's claims against Defendant Lamb.

### F. Fourteenth Amendment Due Process Claims

#### 1. Claims Concerning Plaintiff's Use of the Grievance Process

Plaintiff states that he filed multiple grievances concerning his medical care and the actions of Defendants. To the extent that Plaintiff's Fourteenth Amendment claims concerns Plaintiff's use of the grievance process, his claims will likewise be dismissed.

Plaintiff has no due process right to file a jail administrative grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, any conduct of Defendants related to Plaintiff's use of the grievance process cannot give rise to a due process claim.

#### 2. Equal Protection Claims

Plaintiff alleges that he was deprived of "equal protection." (Compl., ECF No. 1, PageID.11.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is,

he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, which fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

**3. Claims Against Defendant Knapp**

Plaintiff alleges that Defendant Knapp overcharged Plaintiff for copying fees, which the Court will liberally construe as a claim for violation of Plaintiff's Fourteenth Amendment right to due process. This due process claim will be dismissed as barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth

Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff does not claim that his state post-deprivation remedies are inadequate. Accordingly, the Court will dismiss Plaintiff's claim against Defendant Knapp.

**4. Violation of MDOC Policy**

Plaintiff also alleges that Defendants violated MDOC policy. To the extent that Plaintiff's Fourteenth Amendment claim may be construed as a claim for violation of MDOC policy, Plaintiff's assertions fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*,

461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any § 1983 claims premised upon violations of MDOC policy and procedure will be dismissed.

## IV. Motion to Appoint Counsel

Plaintiff has also filed a motion to appoint counsel. (ECF No. 3.) In his motion, Plaintiff claims that his case is "very meritorious," counsel will "greatly help expose the truth," that he cannot afford counsel, and that his lack of experience in and understanding of the law necessitate an attorney for the preparation of the case, discovery, and trial. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado*, 992 F.2d at 604–05. The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court will therefore deny Plaintiff's request for appointment of counsel (ECF No. 3) without prejudice.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Washington, Schiebner, Winger, Russell, Riggin, Gurko, Wilkinson, Anderson, Bray, Keys, Kuerth, Mitteer,

Rhoads, Coulson, Sherwood, Korth-McDonnell, Knapp, Lamb, Crawford, and Barnse will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Hamilton: official capacity claims, First Amendment claims, Fourteenth Amendment claims, and Eighth Amendment claims concerning the events of August 14, 2024, and October 7, 2024. Plaintiff's Eighth Amendment claim against Defendant Hamilton alleging that Defendant Hamilton denied Plaintiff medical treatment as detailed on page 6 of Plaintiff's complaint remains in the case. The Court will further deny Plaintiff's motion to appoint counsel (ECF No. 3) without prejudice.

An order consistent with this opinion will be entered.

Dated: August 20, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge